IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:22-CV-2759-D |
| § | |
| UMBRELLA FINANCIAL § | |
| SERVICES, LLC D.B.A. UMBRELLA § | |
| FINANCIAL SERVICES TAX § | |
| SOLUTIONS GROUP / D.B.A. 780 § | |
| CREDIT CONNECTIONS / D.B.A. § | |
| INTEGRITY TAX SERVICES; KEVIN § | |
| MURPHY; AND ASHLEY DIONDRIA § | |
| FISHER, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION

Plaintiff United States of America (the "government") moves for a preliminary injunction against defendants Umbrella Financial Services, LLC ("Umbrella"), Kevin Murphy ("Murphy"), and Ashley Diondria Fisher ("Fisher") preventing them from engaging in a variety of commercial tax preparation activities. On January 19, 2024 the court entered a stipulated preliminary injunction against Umbrella and Murphy. In this memorandum opinion, the court addresses the remainder of the motion, which applies to defendant Fisher. For the reasons that follow,[1] the court grants the motion and enters a preliminary injunction against Fisher by separate order filed today.

---

[1] As permitted by Fed. R. Civ. P. 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion.

I

Umbrella, owned and operated by Murphy, is a "national licensor of tax preparation businesses." Compl. ¶ 1. Umbrella provides tax preparation resources to licensees, who in turn assist taxpayers in filing their annual tax returns. The government alleges that Fisher is employed by Umbrella as "Chief Knowledge Officer." *Id.* ¶ 33.

The government ultimately seeks a permanent injunction preventing defendants from, *inter alia*, preparing or filing tax returns for taxpayers other than themselves, working at a business that prepares tax returns or other tax documents, or obtaining a Preparer Tax Identification Number ("PTIN") or Electronic Filing Identification Number ("EFIN"). The government also seeks disgorgement of ill-gotten gains pursuant to 26 U.S.C. § 7402. It alleges that, over the course of multiple years, in multiple states, Umbrella licensees have prepared fraudulent tax returns designed to inflate the amount returned to the taxpayer, thus increasing the commission shared between Umbrella and the licensee. It asserts that this fraudulent activity has resulted in millions of dollars in tax harm.

In support of its motion for preliminary injunction, the government has introduced extensive records substantiating Fisher's involvement in this fraudulent activity. In particular, it has produced evidence proving that Fisher has prepared tax returns, filed both under her own name and surreptitiously under the names of other individuals, that are chronically and intentionally falsified. It has also adduced evidence that—after the Internal Revenue Service ("IRS") expelled Fisher from its e-File program in 2016 for filing fraudulent tax returns—Fisher obtained and used multiple EFINs in her aunt's name and also

improperly utilized EFINs belonging to other individuals, so that Fisher could continue filing tax returns for her own financial gain. The government has also produced evidence that Fisher, as an Umbrella employee, aided Umbrella in "trafficking" EFINs—i.e., allowing Umbrella software licensees who were not approved by the IRS for their own EFINs to unlawfully use EFINs assigned to others. The record indicates that tax returns attributed to Fisher have generated over $1 million in revenue, shared between her and Umbrella, since 2017.

Citing the approaching 2024 tax-filing season and the "new opportunity" that the season may provide "for Defendants' systemic fabrications to further harm the internal revenue system," P. Br. (ECF No. 55) at 7, the government moves under 26 U.S.C. §§ 7402, 7407, and 7408 and the traditional factors for injunctive relief for a preliminary injunction enjoining Fisher and the other defendants from engaging in a variety of commercial tax preparation activities. The government and defendants Umbrella and Murphy have agreed to the entry of a stipulated preliminary injunction, which the court entered on January 19, 2024. The court now addresses of the remainder of the motion, which applies to Fisher. The court is deciding this motion on the papers, without conducting an evidentiary hearing, as permitted by Fed. R. Civ. P. 43(c). *See, e.g.*, *Wireless Agents, LLC v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

II

As a threshold matter, the court considers Fisher's contention that the entry of the stipulated preliminary injunction against Umbrella and Murphy moots the instant motion pertaining to Fisher.

The doctrine of mootness requires that "[t]he parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) (internal quotation marks and citation omitted). A plaintiff's claim is not moot "[a]s long as [it has] a concrete interest, however small, in the outcome of the litigation[.]" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks and citation omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 313 (5th Cir. 2015) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

The court holds that it is possible to grant the relief that the government requests against Fisher in its motion, even after the entry of the stipulated preliminary injunction against Umbrella and Murphy. Although the requested preliminary injunction would prevent Umbrella and Murphy from working with Fisher and make her unable to use Umbrella's system and software, it does not cover other possible conduct by Fisher that the government seeks to enjoin. Consequently, the instant motion is not moot.

III

"A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.'"

*Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (unpublished table decision) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)). "The decision to grant a preliminary injunction 'is to be treated as the exception rather than the rule.'" *Id.* (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (stating that movant must "clearly carr[y] the burden of persuasion")).

Traditionally, a party seeking a preliminary injunction must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023) (citation omitted). But that traditional standard does not apply, and the court need not engage in that analysis, when injunctive relief is "explicitly authorized by statute." *Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 157 (5th Cir. 1982) (citations omitted). "When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *Id.* (citations omitted); *see United States v. Sang*, 2022 WL 581012, at *6 (E.D.N.Y. Feb. 26, 2022) (noting that "[b]ecause section 7407 sets forth statutory conditions for equitable relief, the Court may issue a preliminary injunction if those conditions are met, without engaging in the traditional analysis for injunctive relief"); *United States v. Madzima*, 2009 WL 2596599, at *1 (N.D. Tex. Aug. 21,

2009) (Boyle, J.) ("Because I.R.C. §§ 7407 and 7408 set forth specific criteria for injunctive relief, the United States need only meet those statutory criteria, without reference to traditional equitable factors, for this Court to issue an injunction under those sections.").

Here, issuance of an injunction is explicitly authorized by 26 U.S.C. §§ 7402, 7407, and 7408, which empower courts to issue injunctions and orders to enforce internal revenue laws. Consequently, to obtain a preliminary injunction, the government need only establish the statutory criteria prescribed by these sections, without reference to the traditional equitable factors.

"[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (citation omitted). "Thus, the district court can accept evidence in the form of deposition transcripts and affidavits." *Id.* (citation omitted).

## IV

The court first considers whether the government is entitled to an injunction under 26 U.S.C. § 7407.

### A

To obtain an injunction under 26 U.S.C. § 7407, the government must prove:

> (1) that a tax return preparer has—
>     (A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
>     (B) misrepresented [her] eligibility to practice before the

> Internal Revenue Service, or otherwise misrepresented [her] experience or education as a tax return preparer,
> (C) guaranteed the payment of any tax refund or the allowance of any tax credit, or
> (D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and
>
> (2) that injunctive relief is appropriate to prevent the recurrence of such conduct.

26 U.S.C. § 7407(b). And if the court finds that the defendant "has continually or repeatedly engaged in" such unlawful conduct "and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin [her] from acting as a tax return preparer." 26 U.S.C. § 7407(b).

B

1

The government has proved that Fisher is a "tax return preparer" under § 7407. Under the Internal Revenue Code, a "tax return preparer" is "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax." 26 U.S.C. § 7701(a)(36)(A). The record establishes that Fisher has directly prepared tax returns for compensation under her own name, and the government has also produced evidence that Fisher directly prepared tax returns for compensation under the name of her former employee, Corinthians McGuire, as a "ghost preparer."[2]

---

[2]"Individuals who prepare but do not sign returns are known as 'ghost' preparers." *United States v. Espinal*, 2021 WL 3666323, at *4 (S.D. Fla. Aug. 18, 2021).

- 7 -

2

The government has also proved that Fisher has engaged in several types of unlawful conduct covered by § 7407(b)(1).

First, the government has proved that Fisher has engaged in conduct subject to penalty under 26 U.S.C. § 6694. "Section 6694 makes it unlawful for a tax preparer to understate a taxpayer's liability if there is no reasonable basis for the position and the tax preparer knew or reasonably should have known of the position." *United States v. Johnston*, 2022 WL 17978909, at *3 (E.D. Tex. May 12, 2022) (citing 26 U.S.C. § 6694(a)). "A tax preparer act[s] unreasonably, and [is] subject to penalties under Section 6694(a), where the tax preparer's conduct [is] pervasive and 'resulted in a significant understatement of [her] clients' tax liabilities[.]'" *Id.* (quoting *United States v. Fontenot*, 2011 WL 13195835, at *10 (E.D. Tex. Aug. 29, 2011)). Section 6694 also makes it unlawful "for a tax preparer to willfully attempt to understate a taxpayer's liability or recklessly or intentionally disregard rules or regulations regarding tax preparation." *Id.* (citing 26 U.S.C. § 6694(b)). "[A] willful understatement of tax liability includes situations where an income tax preparer disregards facts supplied to [her] by the taxpayer (or others) in an attempt to reduce the taxpayer's liability . . . . It can also include an intentional disregard of Internal Revenue Code rules and regulations." *Fontenot*, 2011 WL 13195835, at *10.

The government has proved that Fisher prepared numerous tax returns that reported "nonexistent Schedule C businesses and expenses, phony household help income, and fake education credits," which uniformly reduced her customers' taxable income or tax due. P.

- 8 -

Br. (ECF No. 55) at 11. Courts across the nation have held that this conduct is unlawful under § 6694. *See, e.g., Johnston*, 2022 WL 17978909, at *4 ("unreasonably understat[ing] the liability of numerous tax returns by fabricating false Schedule C business expenses" violates § 6694); *United States v. Stinson*, 239 F.Supp.3d 1299, 1319 (M.D. Fla. 2017) (preparing tax returns with false and improper claims that wrongfully reduces taxpayers' liability violates § 6694); *United States v. Burgess*, 2017 WL 373493, at *3 (D.N.J. Jan. 24, 2017) (preparation of tax returns to understate customers' tax liabilities by fabricating dependents, Schedule C businesses, expenses, tax credits, and charitable contributions violates § 6694); *United States v. Franchi*, 756 F. Supp. 889, 893 (W.D. Pa. 1991) (falsifying an amount on a tax return is both "unreasonable" and "willful" conduct). The government has also proved that Fisher engaged in this conduct intentionally. One former Umbrella employee, for example, testified that Fisher showed him "how to manipulate tax returns" and "showed him on the software how to add an extra $6,000-$7,000" to a taxpayer's reported income. P. App. (ECF No. 60) at 461.

Second, the government has proved that Fisher has engaged in "fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws." 26 U.S.C. § 7407(b)(1)(D). In particular, the government has produced evidence that Fisher—who knew she had been expelled from the IRS's e-File program in 2016 and therefore could no longer obtain EFINs in her own name—afterward obtained EFINs in her aunt's name, allowed those EFINs to be used by other individuals in the Umbrella network, and used the EFINs of multiple other individuals to prepare tax

returns. The government has produced deposition testimony establishing that this conduct substantially interferes with the proper administration of revenue laws. For example, an IRS investigator testified that it "stifles the [IRS's] e-File program and prevents [the IRS] from effectively monitoring EFIN usage." P. Br. (ECF No. 55) at 39. Numerous federal courts have enjoined this exact behavior under § 7407, denouncing this kind of "EFIN roulette" as "certainly" "fraudulent or deceptive." *United States v. Brier*, 2010 WL 4510945, at *11, 14 (D.R.I. Nov. 5, 2010); *see, e.g.*, *United States v. ITS Fin., LLC*, 2013 WL 5947222, at *90 (S.D. Ohio Nov. 6, 2013), *aff'd in part*, 592 Fed. Appx. 387 (6th Cir. 2014).

3

The government has also shown that injunctive relief is appropriate to prevent the recurrence of Fisher's conduct.

When determining the appropriateness of injunctive relief to prevent recurrence, courts customarily consider the totality of the circumstances, as well as the following factors: (1) the gravity of harm caused; (2) the extent of the defendant's participation and degree of scienter; (3) whether the infraction was isolated or recurrent and the likelihood that the defendant's business activities might again involve her in such transactions; (4) the defendant's recognition of culpability; and (5) the sincerity of the defendant's assurances against future violations. *United States v. Hand-Bostick*, 2014 WL 5023633, at *9 (N.D. Tex. Oct. 8, 2014) (Lindsay, J.) (citing *United States v. Buttorff*, 761 F.2d 1056, 1062-63 (5th Cir. 1985); *United States v. Bailey*, 789 F. Supp. 788, 816 (N.D. Tex. 1992) (Means, J.)).

These factors support the issuance of a preliminary injunction. The record establishes

that the harm Fisher's conduct has caused the United States is grave: she has repeatedly understated her customers' tax liability, thereby depriving the government of duly owed taxes; she has continuously abused the IRS's e-File program by filing tax returns under false names; and she has caused the IRS to expend significant time and funds to investigate her conduct. *See United States v. Carter*, 2017 WL 4369488, at *3 (W.D.N.C. Oct. 2, 2017) (a tax preparer's understatements of liability, as well as time and funds expended by the IRS to investigate her fraudulent filings, constitutes grave harm to the government). This conduct was "not a product of ignorance nor incompetence," but was intentionally carried out—in other words, "executed with scienter." *Id.* Further, the conduct is recurrent: the government has proved that Fisher has continually engaged in it for at least six years. Finally, Fisher has neither admitted culpability nor made assurances that she will not engage in such conduct in the future. Rather, she continues to contend that the government's action against her is a case of mistaken identity—that a different woman named Ashley is actually the person who should be sued. Considering these factors, as well as the totality of the circumstances, the court finds that injunctive relief is warranted to prevent the recurrence of Fisher's conduct.

4

In addition to satisfying all required factors for an injunction under § 7407, the government has also shown that it is entitled to a broad injunction prohibiting Fisher from acting as a tax preparer.

The court may issue an injunction barring an individual from acting as a tax preparer altogether where she "has continually or repeatedly engaged in" the unlawful conduct

alleged, such that "an injunction prohibiting such conduct would not be sufficient to prevent [her] interference with the proper administration" of the internal revenue laws. 26 U.S.C. § 7404(b). Courts use the same factors "to assess whether to enjoin the defendant from engaging in the prohibited conduct or from acting as a tax preparer altogether." *Johnston*, 2022 WL 17978909, at *5 n.1 (citing *Bailey*, 789 F. Supp. at 816).

The factors above, *see supra* § IV(B)(3), support the finding that an injunction is called for to prevent the recurrence of Fisher's conduct. Furthermore, it is clear that Fisher's conduct is continual or repeated: she has engaged in it habitually for at least six years. In particular, she has prepared or assisted in preparing tax returns in ways that make it difficult for the government to discern whether she is actually the preparer. In light of these repeated infractions and her repeated tendency to find ways to surreptitiously prepare and file, or assist in preparing and filing, electronic tax returns despite her personal bar from the IRS's e-File system, the court concludes that a narrower § 7407 injunction would be insufficient to prevent her interference with the proper administration of the IRC.

C

As explained above, the government has produced evidence satisfying all requirements for an injunction against Fisher under § 7407—including evidence that establishes its entitlement to a broad injunction that completely precludes Fisher from acting as a tax return preparer. The government is therefore entitled to such a preliminary injunction.

V

The court next considers whether the government is entitled to an injunction under 26 U.S.C. § 7408.

A

To obtain an injunction under 26 U.S.C. § 7408, the government must show that (1) the person to be enjoined has engaged in conduct subject to penalty under, *inter alia*, 26 U.S.C. § 6701(a); and (2) injunctive relief is appropriate to prevent recurrence of such conduct. *See* 26 U.S.C. § 7408. Section 6701(a) penalizes any person

> (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
> (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
> (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person[.]

26 U.S.C. § 6701(a). In short, § 6701(a) "imposes a penalty on any person who knowingly aids and abets others in underreporting [her] tax liability." *United States v. Simon*, 824 Fed. Appx. 986, 990 (11th Cir. 2020) (citing § 6701(a)).

B

The government has proved that it is entitled to an injunction under § 7408.

First, the government has shown that Fisher engaged in conduct subject to penalty under § 6701(a). As explained above, numerous customers engaged Fisher as their tax return preparer, and there is evidence indicating that she either prepared or aided, assisted in, or

advised the preparation of their tax returns and others that ultimately did not bear her name and/or that fabricated deductions and losses. The evidence also establishes that Fisher knew or had reason to believe that the portions she assisted in preparing would be used in calculating those customers' tax liability—an activity that courts have previously concluded is a "material matter" arising under the internal revenue laws. *See, e.g.*, *United States v. Salmon*, 2018 WL 6495070, at *15 (E.D.N.C. Dec. 10, 2018). Finally, the government has met its burden of showing Fisher's actual knowledge, because "pervasive conduct is sufficient to show actual knowledge as required by Section 7601." *Johnston*, 2022 WL 17978909, at *4.

Second, as explained above, *see supra* § IV(B)(3), injunctive relief is warranted to prevent recurrence of this conduct.

C

Because the government has met its burden of showing that it satisfies § 7408's requirements, it is entitled to a preliminary injunction under this section.

VI

Finally, the court considers whether the government is entitled to an injunction under 26 U.S.C. § 7402.

A

Under 26 U.S.C. § 7402, the court may enter an injunction "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). This remedy is "in addition to and not exclusive of any and all other remedies" the court could

order to enforce these laws. 26 U.S.C. § 7204(a). "[T]he majority of district courts in Texas and elsewhere" recognize "that the traditional requirements associated with injunctions need not necessarily be met in order to obtain a § 7402(a)-based injunction." *United States v. Padron*, 2017 WL 2060308, at *4 (S.D. Tex. May 12, 2017) (collecting cases). Nonetheless, the court is "free" to weigh the traditional factors when considering an injunction under this section. *United States v. Grider*, 2010 WL 4514623, at *2 (N.D. Tex. Nov. 2, 2010) (Fitzwater, C.J.).

B

1

The government has clearly carried its burden of showing a substantial likelihood of success on the merits of its underlying claims. It has introduced plentiful documentation supporting its claims that Fisher has engaged in conduct that is fraudulent and deceptive, violates §§ 6694 and 6701, and interferes with the administration of the internal revenue laws. Although Fisher attempts to establish that she is not a proper defendant in this action and that the government's evidence is fundamentally unreliable, the government has presented clear, extensive, and reliable proof of Fisher's involvement in the conduct it seeks to enjoin, and Fisher has not adequately negated that evidence.

2

The government has also demonstrated a substantial threat that it will suffer irreparable injury absent a preliminary injunction. The Supreme Court has interpreted this factor to mean that plaintiffs seeking preliminary relief must "demonstrate that irreparable

- 15 -

injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Fisher contends that the court's entry of the stipulated preliminary injunction against Umbrella and Murphy means that there is no longer a risk of irreparable harm absent a preliminary injunction against her, because she is now prevented from using Umbrella's system and software. But the record establishes that Fisher has a track record of habitual fradulent tax preparation activity, as well as the skills and resources to continue to undertake such activity even without access to Umbrella's platform. This, combined with her unwillingness to concede that she has engaged in unlawful conduct, persuades the court that if Fisher is not enjoined, the government will likely continue to suffer a loss of tax revenue, a drain on IRS compliance and investigative resources, and harm to the public image and integrity of the national tax system.

3

The balance between the harm to the government if Fisher is not enjoined and the harm to Fisher if she is enjoined weighs generally in favor of the government. The government contends that Fisher's fraudulent and deceptive conduct "undermine[s] the internal revenue laws and promote[s] non-compliance." P. Br. (ECF No. 55) at 51 (quoting *United States v. Fisher*, 2004 WL 489822, at *8 (N.D. Tex. Jan. 26, 2004) (Fish, C.J.)). Specifically, the government asserts that, absent an injunction, it will continue to suffer (1) loss of tax revenue; (2) a drain on IRS compliance and investigative resources; and (3) harm to the tax system generally when competitors and the public perceive that Fisher is disregarding federal tax laws without consequence. *Id.* at 51-52. On the other hand, if Fisher

is enjoined, her business and her personal financial stability will presumably suffer, because she will not be able to engage in the type of tax preparation activities that are the foundation of her business. But because Fisher's "business model fundamentally depends on defrauding customers and the government, which does not provide a legitimate source of income," any harm caused to Fisher by an injunction would be "substantially outweighed by the harm to which [her] clients" and the government are subjected. *United States v. Marc*, 2020 WL 6064793, at *8 (M.D. Fla. Sept. 1, 2020).

4

The issuance of a preliminary injunction against Fisher will not disserve the public interest. There is a "broad public interest in maintaining a sound tax system." *Grider*, 2010 WL 4514623, at *4; *United States v. Lee*, 455 U.S. 252, 253 (1982). As the government points out, granting a preliminary injunction will prevent Fisher from harming the integrity of the nation's tax system, from "deceiv[ing] hard-working, law-abiding citizens who entrust [her] to prepare their returns honestly and accurately" and exploiting them for monetary gain, from depleting the government's tax revenue, and from using up additional government resources in investigation and prosecution. P. Br. (ECF No. 55) at 52.

C

Because the traditional factors weigh in favor of granting an injunction, the court concludes that the government is entitled to an injunction under § 7402.

VII

As a backstop, the government asks for a preliminary injunction under the traditional equitable factors. Because the court has concluded that the government is entitled to an injunction under § 7402 based on the traditional factors, it also concludes that the government is independently entitled to a preliminary injunction under those factors.

\* \* \*

For the reasons explained, the court grants the government's motion for a preliminary injunction against Fisher. A preliminary injunction is being filed today by separate order.

February 5, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE